No. 6267.

# BURKENROAD-GOLDSMITH COMPANY, LIMITED, vs. ILLINOIS CENTRAL RAILROAD COMPANY.

## Syllabus.

When goods are injured while in transit in the possession of the carrier the measure of damages is the difference between their value in their damaged state, to be ascertained by an auction sale, and their value in good order at the port of destination.

When the consignee refuses to accept delivery of the goods, it becomes the duty of the carrier to properly care for them. If the goods are perishable, or if damaged, they may grow worse by delay, the carrier must sell them.

Judgment reversed; judgment now rendered in favor of plaintiff for $568.95 with costs in both Courts.

Appeal from the Civil District Court for the Parish of Orleans, Division "E," No. 104,009. Honorable G. H. Theard, Judge.

Charles Rosen, for plaintiff and appellant.

Lemle, Jones & Moreno, for defendant and appellee.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court, as follows:

Plaintiff represents that on April 26th, 1912, it delivered unto the defendant at Memphis three hundred sacks of feed to be carried to Starks, Louisiana, and delivered to the Lutcher Moore Turpentine Works, to whom plaintiff had agreed to sell said feed for the price of $568.95; that while in the possession of the defendant said feed was damaged, and when it arrived at Starks on May 18th, 1912, it was wet, hard, and lumpy, and unfit

for use and worthless, in consequence whereof the said Lutcher Moore Turpentine Works, consignees, refused to accept said feed or pay the price thereof; that on June 14th, 1912, petitioner filed its claim with defendant which refused to pay the same, and petitioner prays for judgment for $568.95, with legal interest from June 14, 1912, till paid, and $50 penalty.

The defendant answers that it delivered the feed at Starks in the same condition as received, and that the bill of lading properly endorsed was surrendered to it, and denies that when the feed arrived at Starks it was wet, hard and lumpy and worthless.

There was judgment for defendant and plaintiff has appealed.

The bill of lading recites that the feed was in apparent good order.

L. G. Anderson was superintendent of the Riverside Elevator; the feed was made by him, it was packed in new sacks direct from the mill into the car and was strictly fresh and in absolutely good condition and order.

J. M. Hawkins, salesman for plaintiff, says he examined the feed in the presence of the agent of the Kansas City Southern Railway Co., who agreed with him that the contents of the car were damaged and unfit for use, on account of which the feed was refused by the consignee.

P. S. Chambers says there was a wreck on the track from Starks to the Lutcher Moore Works which necessitated the transfer of the feed to another car; the feed in that car was rotten from the bottom of the car upward to a depth of about four feet, there was a water or mud line on the walls of the car inside; the

bottom of the car was wet and slick after the feed was removed.

Bachelor, a witness for defendant, says the feed was damaged about $65.

After the Lutcher Moore Works rejected the feed it was returned to the Kansas City Railroad, a connecting carrier, which transported it to Shreveport and sold it during July, 1912.

The defendant admits that it is liable for any damage to the feed, but contends that the extent of that damage and liability has not been made certain in a manner required by jurisprudence; that this manner is sole and exclusive; and consists in a public sale of the damaged goods upon their arrival at point of destination and the damage is the difference between the net price of sale and the value of the goods at destination.

In support of its proposition it quotes the following authorities:

Greenwood vs. Cooper, 10 A., 796.

Henderson vs. Maid of Orleans, 12 A., 352.

Elkins vs. N. O. & N. Y. S. S. Co., 14 A., 647.

Smith vs. Wall, 18 A., 724.

Silverman vs. Rrd. Co., 51 A., 1785.

Alford vs. I. C. Rrd. Co., No. 5483 Court of Appeal, January 9th, 1912.

See, also, Cyc., p. 533 (B) 532 (111). 10 A., 280.

In the case of **Greenwood vs. Cooper**, the consignees sold the damaged goods at auction, and the Court held that it was a proper method of ascertaining the damage in the case of perishable goods.

In the case of **Henderson vs. Maid of Orleans**, the consignee received and kept the damaged clocks and sued the

carrier for their value. The Supreme Court said he should have sold them at public auction to "liquidate the damages;" that he could not keep the clocks and recover their value.

There was judgment of non suit.

In the case of **Elkins vs. New York S. S. Co.**, the Court held that the rule laid down in the above case was applicable to cases where the goods had some value, but not where they were valueless.

See also, 14 A., 429.

In the case of **Smith vs. Wall**, the goods were delivered to the consignee; the doctrine of **Henderson vs. Maid of Orleans** was affirmed and plaintiff non-suited.

In the case of **Silverman vs. St. Louis Rrd.**, the plaintiff's claim was rejected because the Court came to the conclusion that "the preponderance of evidence leads to the conclusion that plaintiff's goods were neither lost nor damaged," and then proceeded, informally, but without necessity, to endorse the rulings in the **Henderson** and **Smith** case.

But the distinction between these two cases and the present case is that in these two cases the plaintiffs who sued had not sold the goods to liquidate their damage and were still in the ownership and possession of them, and as said by the Court, they could not continue to own the goods and at the same time recover their value from the carrier. But in the instant case the plaintiffs are not in possession of the goods, and the goods have been sold at public auction and the damage to the goods has been liquidated. If the goods had been sold by the plaintiffs, their price should be credited to the claim against the defendants, because the price would have been in plaintiff's

·hands. But in this case the price is not in plaintiff's hands, but in the hands of another.

When the consignee refuses to accept delivery of the shipment, it becomes the duty of the carrier to properly care for it, as the agent of the owner. He must put it in a warehouse if necessary. If the goods are perishable, or if·damaged, they may grow worse by delay, the carrier must sell them. As was said in the case of **Silverman vs. the I. C. Railroad,** on page 1794:

> "The goods were in defendant's possession, and it was bound to take such action concerning them as would minimize the alleged loss whether that loss was eventually to fall upon it or upon the plaintiff."
>
> "On the consignee's refusel to accept the consignment of a car of oranges in a decayed condition, the carrier should sell the fruit at the best price attainable."
>
> **Hull vs. Mo. Pac. Ry. Co., 60 Mo. App. Rep., 593.**

> "If a consignee refused to receive goods consigned to him, it is the duty of the carrier to take such steps in relation to the goods as will advance the owner's interest and purposes, what he ought to do in a given case will depend upon the circumstances of the particular case."
>
> **Steamboat Keystone vs. Moies, 28 Mo., 243.**
>
> See also: **Searle vs. Scovell, 4 Johnson (Chancery Rep.) 218, 222. 5 Am. & Eng. Enc. Law, 2nd. Ed., p. 222, 223, 405, 417; 6 Cyc., p. 510; 2 Sale of Damaged Goods.**

The feed was in the possession of the defendants. They knew that it was damaged and consequently of a perishable nature. They were in a position to discover and to know whether it was getting worse by delay, and they

had reason to believe that it was, and it was their duty to act as the situation required. The Kansas City Southern Railroad, a connecting road, hauled the feed to Shreveport, and kept it there until the middle of July when they caused it to be sold at public auction. Thus the Kansas City Railroad did what defendants say the plaintiffs should have done. The proceeds of sale were clearly the property of plaintiffs, and the difference between them and the value of the feed became the amount of liquidated damages in favor of plaintiffs. If there was any increased cost resulting from the hauling to Shreveport plaintiffs cannot be made to bear them, as the Railroad had no right to haul the feed there at plaintiff's expense. If there was any increased damage by weevils or otherwise following the delay to sell the feed until July, it was the fault of the Railroad, which cannot be visited upon plaintiffs.

The defendant is liable for the fault of the Kansas City Southern Railroad. The Carmack Amendment to the Interstate Commerce Act provides:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass."
132 La., 650.

We arrive at the conclusion, therefore, that the plaintiffs are entitled to recover the proceeds of sale of the feed and the difference between that and the value of

the feed at the point of destination, making a total of $568.95.

The plaintiffs also claim fiᵗty dollars, the penalty provided by Act 29 of 1908, p. 31, Sec. 2, against common carriers for failure to adjust and settle claims for damage to freight within 60 days. This penalty is in favor of the "consignee." As this statute must be interpreted strictly, and as plaintiffs are not the "consignees" they cannot recover the penalty.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be reversed, and it is now ordered that there be judgment in favor of the plaintiffs, the Burkenroad-Goldsmith Company, Ltd., and against defendants, the Illinois Central Railroad Company, for five hundred and sixty-eight 95/100 dollars with five per cent per annum interest from June 14th, 1912, till paid and all costs of both Courts.

Judgment reversed.

Opinion and decree April 19th, 1915.

Rehearing refused, May 3rd, 1915.

Writ granted, June 7, 1915.

(138 La., 81.)

St. Paul, J.—I dissent. I think the plaintiffs should recover the sum of $65.00, amount of damages admittedly due by this defendant; and are of course entitled to receive from the Kansas City Company the net proceeds of the shipment,—which latter company appears to me to have acted for the best advantage of whosoever might be concerned. But I am of opinion that plaintiff was at fault in not taking charge of their own property, holding the

defendant for the actual damages, and the consignee for all other losses due to their refusal to accept the sound part of the shipment.

The effect of the present opinion, however, is to permit plaintiffs to do exactly what they claim the right to do, viz, to abandon the shipment, and hold the carrier for its value, and I do not understand that to be the law.

New Orleans, La., April 19th, 1915.